**UNITED STATES of America, ex rel. Maxine JONES, Plaintiff–Appellant,**

**v.**

**HORIZON HEALTHCARE CORPORATION, Defendant–Appellee.**

No. 97–1635.

United States Court of Appeals, Sixth Circuit.

Argued June 19, 1998.

Decided Nov. 9, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 11, 1999.

H. Nathan Resnick (argued and briefed), Leigh Dones Moss (briefed), Resnick & Associates, W. Bloomfield, Michigan, for Plaintiff–Appellant.

James H. Geary (argued and briefed), Howard & Howard, Kalamazoo, Michigan, Brad A. Rayle (briefed), Carol A. Friend (briefed), Howard & Howard, Bloomfield Hills, Michigan, for Defendant–Appellee.

Before: MOORE, CLAY, and GILMAN, Circuit Judges.

CLAY, J., delivered the opinion of the court, in which MOORE, J., joined. GILMAN, J. (pp. 335–337), delivered a separate opinion concurring in the result.

## OPINION

CLAY, Circuit Judge.

Plaintiff–Appellant Maxine Jones brought this *qui tam* action under the Federal False Claims Act, 31 U.S.C. §§ 3729–3733 (1994), against Defendant–Appellee Horizon Healthcare Corporation on the basis of Horizon Healthcare's allegedly fraudulent activities against the United States. The district court granted summary judgment in favor of Horizon Healthcare for lack of subject matter jurisdiction. For the reasons set forth below, we hereby **AFFIRM** the ruling of the district court.

### I.

Plaintiff–Appellant Maxine Jones ("Appellant") was hired by Defendant–Appellee Horizon Healthcare Corporation ("Appellee") as a patient care services consultant in November of 1992. Her job responsibilities included reviewing Medicare claim forms which sought reimbursement for services performed at several of Appellee's skilled health care facilities in Michigan and Wisconsin.

Appellant claims that while conducting a claims review in March of 1993, she discovered that several of the claim forms prepared by Appellee's administration and employees were incorrect because the services allegedly performed did not correspond with the patients' files and the instructions of the medical staff. Appellant alleges that she informed management of the fraudulent claims and, as a result of her actions, her employment was terminated three months later. After her termination, Appellant applied for

unemployment benefits with the Michigan Employment Security Commission and provided a statement detailing the reasons for her discharge, including her allegation that Appellee was preparing, and perhaps filing, false Medicare claims. Appellant also allegedly contacted someone at the Michigan Department of Public Health about her allegations of fraud.

On September 16, 1993, Appellant filed a complaint in the United States District Court for the Eastern District of Michigan, pursuant to diversity jurisdiction, under the Michigan Whistleblower's Protection Act, MICH. COMP. LAWS ANN. §§ 15.361–.369 (West 1994) ("WPA"), asserting that she was wrongfully terminated after she discovered that false reimbursement claims had been prepared by Appellee. Appellant claims that she did not know at that time whether the forms actually had been submitted in violation of Medicare guidelines, because she had only been told that the matter was "being taken care of" when she had complained to management.

On April 21, 1994, Appellant filed a second complaint in the United States District Court for the Eastern District of Michigan against Appellee relating to the fraudulent Medicare forms, this one a *qui tam* action[1] pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3729–3733 (1994) ("FCA"). The FCA complaint, which was filed under seal as required by the statute, specifically alleged that Appellee had submitted the false Medicare forms to the government for reimbursement. Appellant claims that it was during the interim between the filing of the two complaints that she was able to determine that the false claims had been submitted, which was necessary for a violation of the FCA. On May 2, 1994, the FCA complaint was served upon the Attorney General

of the United States, but the Department of Justice ultimately declined to intervene.

Appellee filed a motion for summary judgment in the FCA action on December 20, 1996. The district court granted Appellee's motion on March 11, 1997, and dismissed the complaint for lack of subject matter jurisdiction under the FCA, which prohibits *qui tam* actions "based upon" public disclosures of fraud unless the plaintiff is an "original source" of the information. The district court later denied Appellant's motion for reconsideration and clarified that the dismissal of the FCA action was without prejudice to the United States. This timely appeal followed.[2]

## II.

This court's review of a district court's dismissal of a Federal False Claims Act case on the basis of lack of subject matter jurisdiction is reviewed de novo. *United States ex rel. McKenzie v. Bellsouth Telecomms., Inc.,* 123 F.3d 935, 938 (6th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 855, 139 L.Ed.2d 755 (1998). All factual allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Id.* However, because federal courts are courts of limited jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Id.*

## III.

The FCA, 31 U.S.C. §§ 3729–3733, has a *qui tam* provision that allows a private individual to bring a civil action for violation of § 3729. *See* 31 U.S.C. § 3730(b)(1) (1994). The individual brings the action as a "relator"[3] in a *qui tam* suit, acting on behalf of

---

1. "Qui tam" is an abbreviation for the Latin phrase "qui tam pro domino rege quam pro si ipso in hac parte sequitur," meaning "Who sues on behalf of the King as well as for himself." BLACK'S LAW DICTIONARY 1251 (6th ed.1990). A *qui tam* action is an action "brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act ..., part of the penalty to go to any person who brings such action and the remainder to the state or some other institution." *Id.*

2. On Appellant's motion, the district court had consolidated the WPA and the FCA cases for purposes of judicial economy on March 5, 1996. (J.A. at 128.) Because Appellee's motion for summary judgment was solely with regard to the FCA action, and the district court's dismissal was expressly limited to that action, the present appeal involves only the FCA case.

3. A "relator" is "[a] party in interest who is permitted to institute a proceeding in the name of the People or the Attorney General when the

the United States government. The government may recover treble damages from anyone who has committed a fraud upon the government, and the individual who brings the action may receive up to thirty percent of the money recovered. 31 U.S.C. § 3730(d)(2) (1994). The history of the FCA was set forth in this Circuit's recent opinion in the *McKenzie* case:

> The original version of the FCA, enacted in 1863, allowed anyone to bring a qui tam action and receive 50 percent of the amount recovered. S. REP. No. 345, 99th Cong., 2d Sess. 8–10 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. This broad provision led to abuse and in 1943, following the Supreme Court's decision in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), which held that a relator could bring a qui tam action even though the action was based entirely upon information contained in a government indictment, Congress amended the FCA. The 1943 version precluded actions "based on evidence or information the government had when the action was brought." *United States ex rel. Stinson v. Prudential Insurance Co.*, 944 F.2d 1149, 1153 (3d Cir.1991) (quoting 31 U.S.C. § 3730(b)(4)(1982) (superseded)). This led to claims being barred even in cases where the qui tam plaintiff supplied the information to the government before filing the claim. *See United States ex rel. Wisconsin v. Dean*, 729 F.2d 1100, 1106 (7th Cir.1984).
>
> In 1986, Congress amended the FCA again "to encourage any individual knowing of Government fraud to bring that information forward." S. REP. No. 345, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266. "To revitalize the qui tam provisions, the amendment provided incentives for private enforcement, including increased monetary awards, adopted a lower burden of proof, and allowed the qui tam plaintiff to remain a party to the action even if the Government intervenes." *Stinson*, 944 F.2d at 1154.

*McKenzie*, 123 F.3d at 938.

The current version of the jurisdictional bar of the FCA provides that:

(4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(A) and (B)(1994).

### IV.

■ In determining whether the jurisdictional bar of § 3730(e)(4) applies to a relator's case, it is useful to break the inquiry down into its elements: (A) whether there has been a public disclosure in a criminal, civil or administrative hearing; or congressional, administrative, or government report, hearing, audit, or investigation; or from the news media; (B) of the allegations or transactions that form the basis of the relator's complaint; and (C) whether the relator's action is "based upon" the publicly disclosed allegations or transactions. If the answer is "no" to any of these questions, the inquiry ends and the *qui tam* action may proceed. If the answer to each of the above questions is "yes," then the final inquiry is (D) whether the relator qualifies as an "original source" under § 3730(e)(4)(B), which also would allow the suit to proceed. *See, e.g., United States ex rel. Dunleavy v. County of Del.*, 123 F.3d 734, 740 (3d Cir.1997). Each of these elements of the jurisdictional bar will be discussed in turn.

### (A) Whether There Has Been a "Public Disclosure"

■ The first inquiry in determining whether the jurisdictional bar of the FCA

right to sue resides solely in that official." BLACK'S LAW DICTIONARY 1289 (6th ed.1990).

applies is whether there has been a "public disclosure" of the claims raised by Appellant in her FCA complaint. The district court ruled that the filing of Appellant's WPA complaint constituted a "public disclosure in a criminal, civil, or administrative hearing" under § 3730(e)(4)(A). During the pendency of this appeal, a panel of this Circuit ruled in the *McKenzie* case that "public disclosure" includes filing documents with a court, such as a complaint. *McKenzie*, 123 F.3d at 939. Therefore, this first element of the jurisdictional bar has been met.

### (B) Whether the Public Disclosure was of the Allegations or Transactions that Form the Basis of Appellant's FCA Complaint

▇ Appellant contends that her WPA complaint was not a public disclosure of the allegations or transactions that form the basis of her FCA complaint. Appellant argues that because her WPA complaint reveals the basis for her allegedly wrongful firing but does not actually allege that Appellee engaged in the fraudulent or actionable event of *submitting* the false claims to the government, the jurisdictional bar does not apply.

In the case of *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C.Cir.1994), the Court of Appeals for the District of Columbia Circuit set up a framework for analyzing whether a public disclosure consists of the "allegations or transactions" that form the basis of the FCA complaint. The court noted that a distinction between "allegations or transactions" and ordinary "information" was warranted as a matter of common usage and sound interpretation of the FCA. *Id.* at 653. The court interpreted the rationale behind the provision as being that many potentially valuable *qui tam* suits would be precluded if the bar applied even when the public disclosure was of innocuous information. *Id.* at 654. Therefore, the court construed the bar as applying only when the allegations of fraud or the critical elements of the fraudulent transaction were publicly disclosed and offered, by way of illustration, the following equation:

[I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed.

\* \* \* \*

[Q]*ui tam* actions are barred only when enough information exists in the public domain to expose the fraudulent transaction (the combination of X and Y), or the allegation of fraud (Z).

*Springfield*, 14 F.3d at 654. Other courts have adopted the *Springfield* reasoning. *E.g., Dunleavy*, 123 F.3d at 741; *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1514 (8th Cir.1994).

Fraud consists of two elements—a misrepresented state of facts and a true state of facts—that constitute the X and the Y of the equation. *See Springfield*, 14 F.3d at 655. Appellant contends that only one element was presented in her WPA complaint because her complaint asserted only that Appellee had prepared false claim forms but not that the false forms were actually submitted to the federal government for reimbursement. Thus, Appellant contends that the WPA complaint disclosed only the true state of facts and not the misrepresented state of facts (*i.e.*, that the false forms were submitted to the government as true). Appellee counters that resort to the X + Y = Z equation is unnecessary because Appellant's WPA complaint actually made an allegation of fraud (*i.e.*, the "Z"). Appellee points to the fact that the substance of the WPA complaint and the FCA complaint are very similar and the WPA complaint frequently refers to "fraudulent claims."

▇ Obviously, the mere use of the word "fraud" is not sufficient to determine whether the WPA complaint consists of an allegation of fraud or the essential elements of fraud. At the same time, Appellant's argument that the WPA complaint does not allege fraud because it does not specifically allege that the false claims were submitted to the

government also is not entirely convincing. Clearly, the complaint claims that the false forms were deliberately prepared or allowed to remain in a false version, presumably to be submitted to the government. Therefore, this case is distinguishable from the ones Appellant relies on in which the disclosed information did not suggest an inference of wrongdoing or bad faith. *Cf. Springfield,* 14 F.3d at 656 (holding that disclosure of facially valid pay vouchers would not defeat jurisdiction where the records did not suggest any misrepresentation on the defendant's part in submitting them); *Dunleavy,* 123 F.3d at 742 (noting that newspaper disclosure of county's retention of proceeds from sale of land would not constitute an allegation of fraud unless it mentioned the misrepresented state of facts—that the county failed to inform the government that it had the funds in its possession).

Cases such as *Springfield* and *Dunleavy* did not constitute allegations of fraud or the essential elements of fraud because the disclosed information did not create an inference of impropriety. *See Rabushka,* 40 F.3d at 1512 (looking to whether the disclosed information raised an inference that the defendants were engaged in fraudulent action); *Springfield,* 14 F.3d at 655 (requiring disclosure of both the true and misrepresented state of facts because both are necessary "to set government investigators on the trail of fraud"). In this case, although Appellant's WPA complaint may not have constituted an explicit, formal allegation of either fraud or the essential elements of fraud, it certainly presented enough facts to create an inference of wrongdoing on the part of Appellee. The complaint disclosed that false claim forms were prepared and at least implied that the fraudulent action—the submission of the forms—either had occurred or was expected to occur. Because the fraudulent submission of these forms was the basis of Appellant's

FCA complaint, the WPA complaint did encompass the "allegations or transactions" that comprise her FCA complaint.

### (C) Whether Appellant's FCA Complaint is "Based Upon" the Public Disclosure

Appellant contends that her FCA complaint is not "based upon" a public disclosure, but rather is "based upon" her employment with Appellee, her own hands-on investigation, and the documents she retained upon her termination. Furthermore, Appellant contends that because she was the source of information for both the WPA suit and the FCA suit, it is irrelevant whether the facts alleged in the FCA suit are similar to the facts set forth in the WPA suit.

■ At least one circuit has held "based upon" to mean "derived from." *See United States ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1348 (4th Cir.1994). However, the Sixth Circuit held in *McKenzie,* in line with the reasoning of several other circuits, that "based upon" means "supported by" and includes any action based even partly upon public disclosures. *McKenzie,* 123 F.3d at 940 (adopting standard in *United States ex rel. Precision Co. v. Koch Indus., Inc.,* 971 F.2d 548, 552 (10th Cir.1992)); *see also United States ex rel. Biddle v. Board of Trustees of the Leland Stanford, Jr. Univ.,* 147 F.3d 821, 826–28 (9th Cir.1998); *Cooper v. Blue Cross and Blue Shield,* 19 F.3d 562, 567 (11th Cir.1994). The *McKenzie* court ruled that individuals who base any part of their allegations on publicly disclosed information are barred from bringing a *qui tam* action. *McKenzie,* 123 F.3d at 940. In making this determination of whether an action is "based upon" a public disclosure, a court should look to whether substantial identity exists between the publicly disclosed allegations or transactions and the *qui tam* complaint.[4] *See id.*

---

4. While admitting that the FCA is not a model of clarity, the concurrence questions our precedent that interprets "based upon" in § 3730(e)(4)(A) to mean "supported by," opining that this interpretation yields "an unnatural contortion of the language." Although the "supported by" interpretation may be somewhat inelegant, we believe that it is correct and that interpreting "based upon" to mean "derived from," as the concurrence suggests, would be problematic. Had Congress simply precluded the bringing of *qui tam* actions based upon publicly disclosed information, the "derived from" interpretation would be sensible. Congress went on, however, to provide an exception. Neither the concurrence nor the Fourth Circuit opinion cited by the concurrence, *United States ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339 (4th Cir.1994), explain why a

 Obviously, the allegations in Appellant's FCA complaint are very similar to the allegations in her WPA complaint. As discussed in the previous section, the primary difference between the two is that the WPA complaint does not actually allege that the false claims were submitted to the government. Appellant notes that *McKenzie* involved a factual situation where the public disclosure on which the *qui tam* plaintiff's action was based consisted of two prior lawsuits brought by other individuals. Because the public disclosure and the *qui tam* action in this case both came from Appellant, she argues that it is improper to consider the *qui tam* action "based upon" the prior suit. Although Appellant's argument has some intuitive appeal, several courts have rejected the contention that a person's *qui tam* action cannot be considered "based upon" that same individual's prior public disclosure. *See Federal Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450–51 (5th Cir.1995) (finding the plaintiff's *qui tam* action "based upon" its own public disclosure in a prior state court action against the same defendant); *Springfield*, 14 F.3d at 656 (finding allegations of fraud placed in the public domain by *qui tam* plaintiff itself required court to proceed to original source analysis).

Although Appellant's *qui tam* action may not be, as a factual matter, derived from her WPA action, this does not exempt her from the "based upon" standard that this court has adopted in light of the problems with a "derived from" standard. *See McKenzie*, 123 F.3d at 940 (noting that use of a "derived from" standard would mean that two identical suits could proceed so long as each relator did not derive his or her claim from the other). Any unfairness of this rule with regard to a *qui tam* plaintiff who was the

source of the public disclosure is mitigated by the fact that a plaintiff in this position still would have the opportunity to maintain her suit if she qualified as an "original source." Consideration of the preceding elements of the jurisdictional bar of § 3730(e)(4)(A) leads to the conclusion that Appellant may maintain her FCA action only if she is found to be an "original source."

### (D) Original Source Inquiry

The FCA states that a court'does not have jurisdiction over an action based upon a public disclosure unless the person bringing the action is an "original source" of the information. *See* 31 U.S.C. § 3730(e)(4)(A) and (B) (1994). "Original source" is defined as an individual: (1) with direct and independent knowledge of the information on which the allegations are based; and (2) who has voluntarily provided the information to the government before filing an action under the FCA which is based upon the information. *See* § 3730(e)(4)(B).

The parties do not dispute the district court's finding that Appellant has "direct and independent knowledge" of the allegations or transactions that are the subject of her FCA complaint. Her knowledge of the facts regarding the alleged fraud clearly is the result of her employment with Appellee and the information she acquired and witnessed as a result of her position. Therefore, the only issue with regard to Appellant's status as an original source is whether she voluntarily provided information to the government about Appellee's allegedly fraudulent conduct prior to filing her FCA complaint.

 In addition to the requirement that a relator must have provided information to

Congress that was intent on eliminating parasitic *qui tam* actions would have provided an exception that allows a relator who qualifies as an original source to maintain an action actually derived from public disclosures. Moreover, although such a relator may have direct knowledge of the information that formed the basis of these public disclosures, we would have to contort normal usage to find that anyone who actually derived his action from public disclosures had "independent" knowledge of this information, as would be required to satisfy the exception. More likely, accepting the "derived from" interpreta-

tion would render Congress' creation of the original source exception superfluous. Although language serves as the starting point in statutory interpretation, we must strive to interpret an ambiguous statute in such a manner as to yield a logical and consistent whole while giving effect to the will of Congress. *See United States ex rel. Findley v. FPC–Boron Employees' Club*, 105 F.3d 675, 681 (D.C.Cir.1997), *cert. denied*, — U.S. ——, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997). We believe that the interpretation of "based upon" that this court adopted in *McKenzie* meets this objective.

the government prior to filing her FCA suit, this Circuit has held that a relator also must provide the government with the information upon which the allegations are based prior to any public disclosure. *See McKenzie*, 123 F.3d at 942 (adopting the approach of *United States ex rel. Findley v. FPC–Boron Employees' Club*, 105 F.3d 675, 690 (D.C.Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997)). The court reasoned that this rule is necessary because one is not a true whistleblower unless she is responsible for alerting the government to the alleged fraud before such information is in the public domain.[5] *Id.*

▮ The district court in this case ruled that Appellant was not an original source because, although Appellant did provide information about Appellee's allegedly fraudulent conduct to the Michigan Employment Security Commission and the Michigan Department of Public Health prior to bringing suit, she failed to disclose her allegations to the *federal* government before filing her WPA and FCA actions.[6] Appellant argues that because there is nothing in the language of § 3730(e)(4)(A) that specifically states that a relator must provide the information to the *federal* government before filing an FCA case, as opposed to any government agency, her actions in disclosing the fraud to Michi-

gan state agencies qualify her as an original source.

Section 3730(e)(4)(A) provides, in part, that an original source is one who has "voluntarily provided the information to the Government before filing an action." Appellant argues that "Government" is ambiguous and, therefore, the court should examine legislative history in order to render an interpretation that gives effect to Congress' intent. *See United States v. Noland (In re First Truck Lines, Inc.)*, 48 F.3d 210, 214 (6th Cir.1995). However, the meaning of the word "Government" in § 3730(e)(4)(A) is not ambiguous. The first reference in § 3730 to "Government" is in § 3730(b)(1), which states that a person may bring an action for violation of section 3729 for the person and for "the United States Government." The very next sentence then states that the action shall be brought in the name of the "Government." This reference clearly is to the United States Government, and the use of "Government" throughout the rest of the section, which describes the procedural and jurisdictional requirements for filing such an action, naturally applies to the federal government as well. Furthermore, since the FCA is concerned with false claims filed against the federal government, this interpretation is the only logical one. Therefore, Appellant's failure to report her allegations of fraud to the

---

5. The concurrence questions whether it was appropriate for the *McKenzie* court to infer a requirement that an original source provide information to the government prior to any public disclosure. We believe that the *McKenzie* court's interpretation of this problematic statute was both legitimate and correct. First, inferring this additional requirement does not conflict with the literal language of the statute. Section 3730(e)(4)(A) permits an original source to proceed with a *qui tam* action despite public disclosure, not despite *prior* public disclosure as the concurrence asserts. The difference is critical. As interpreted by *McKenzie*, the statute does not bar a relator who discloses information to the government prior to filing suit and prior to this information becoming public from maintaining the action despite the information becoming public before the action is heard. Without the original source exception, the court would lack jurisdiction to hear such an action. In this respect, the *McKenzie* interpretation is perfectly consistent with the statute as written. Second, the *McKenzie* interpretation merely ensures that an "original source" be original. This requirement

encourages individuals to report fraud to the government expeditiously and works to preclude parasitic actions. The *McKenzie* court recognized that the other circuits that had considered this interpretive question were split, and this court decided that an interpretation of these sections that requires a relator to disclose the relevant information to the government prior to any public disclosure was most in keeping with the language and intent of the statute. We believe that this decision was correct, and it is certainly the law of the Circuit.

6. Appellant alleges for the first time on appeal that her counsel contacted someone with the Department of Justice in December of 1993, prior to filing the FCA case. Appellee disputes this contention and properly notes that this argument may be considered waived because it is raised for the first time on appeal. *See Brickner v. Voinovich*, 977 F.2d 235, 238 (6th Cir.1992). Furthermore, although this alleged contact was prior to Appellant's filing of her FCA suit, it was not prior to the public disclosure by way of her WPA suit.

federal government prior to filing her suit prevents her from being an original source.[7]

## V.

██ The *qui tam* provisions of the Federal False Claims Act are intended to encourage private individuals who are aware of fraud being perpetrated against the government to bring such information forward and to prevent parasitic *qui tam* actions in which relators simply feed off of previous disclosures of government fraud. *See McKenzie*, 123 F.3d at 942–943; *Springfield*, 14 F.3d at 651 (calling FCA a congressional effort "to walk a fine line between encouraging whistleblowing and discouraging opportunistic behavior"). Although Appellant's lawsuit in this case was neither parasitic nor opportunistic, the *qui tam* provisions were intended not only to block freeloading relators, but also to inspire whistleblowers to come forward as soon as possible. *See Findley*, 105 F.3d at 685 ("[T]he *qui tam* provisions of the FCA were designed to inspire whistleblowers to come forward promptly with information concerning fraud so that the government can stop it and recover ill-gotten gains.").

Because Appellant's FCA action was based upon the prior public disclosure of the allegations of fraud against Appellee, and because Appellant does not qualify as an original source due to her failure to bring the information to the federal government prior to the public disclosure, the district court properly determined that it lacked subject matter jurisdiction over her action. Accordingly, we hereby **AFFIRM** the ruling of the district court.

GILMAN, Circuit Judge, concurring.

I concur in the result reached by the majority, both because Maxine Jones failed to report her allegations of fraud to the federal government before filing her False Claims Act (FCA) complaint (an explicit requirement of 31 U.S.C. § 3730(e)(4)(B)), and because we are bound by the earlier decision of this

court in *United States ex rel. McKenzie v. Bellsouth Telecomms., Inc.*, 123 F.3d 935 (6th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 855, 139 L.Ed.2d 755 (1998). I write separately, however, because I believe that two of the key rulings in *McKenzie* were wrongly decided.

The first ruling I question is the court's construction of the phrase "based upon" in 31 U.S.C. § 3730(e)(4)(A) as meaning "supported by." *Id.* at 940. The other ruling I question is the judicial addition to 31 U.S.C. § 3730(e)(4)(B) of a requirement "that, to be an original source, a relator must inform the government of the alleged fraud before the information has been publicly disclosed." *Id.* at 942.

For ease of reference, I have repeated below the operative language from the FCA:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(A) and (B)(1994). (Henceforth these subsections will simply be referred to as (A) and (B).)

To say the least, the above statutory language has not been found to be a model of clarity. The District of Columbia Circuit had this to say about (A) (the "public disclosure" prong of the statute):

---

**7.** We note that 31 U.S.C. § 3730(b)(2) instructs a relator to file her FCA complaint under seal, as Appellant did here. It is Appellant's prior WPA complaint, not her sealed FCA complaint, that constitutes the public disclosure that must be preceded by disclosure to the federal government to comply with the original source requirements of 31 U.S.C. § 3730(e)(4)(B) as interpreted in *McKenzie*.

Virtually every court of appeals that has considered the public disclosure bar explicitly or implicitly agrees on one thing, however: the language of the statute is not so plain as to clearly describe which cases Congress intended to bar. *United States ex rel. Findley v. FPC–Boron Employees' Club,* 105 F.3d 675, 681 (D.C.Cir. 1997). The court made a similar comment as to (B) (the "original source" prong of the statute):

As with the "public disclosure" prong, courts addressing the "original source" prong of the jurisdictional bar have interpreted it in varying ways.

*Id.* at 689.

Interpreting ambiguous statutory language, of course, is the bread-and-butter work of the federal courts. In doing so, the courts should adopt a reasonable interpretation that furthers the purpose that Congress intended. *United States v. American Trucking Ass'ns Inc.,* 310 U.S. 534, 542, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). But Congress's "general intention ... must be carried into language which can be reasonably construed to effect it. Otherwise the intention can not be enforced by the courts. The provisions of such acts are not to be extended by implication." *Smietanka v. First Trust & Sav. Bank,* 257 U.S. 602, 606, 42 S.Ct. 223, 66 L.Ed. 391 (1922) (interpreting a provision of the Income Tax Law of 1913 relating to the taxation of income held and accumulated by a trustee for the benefit of unborn and unascertained persons).

Which brings me to the first *McKenzie* ruling I question: the interpretation of "based upon" in (A) to mean "supported by." I believe that the Fourth Circuit got it right when it found that "based upon" means "derived from." *United States ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1348 (4th Cir.1994). This interpretation strikes me as both linguistically correct and fully consistent with Congress's objective of preventing parasitic lawsuits. *Id.* ("Such an understanding of the term 'based upon,' apart from giving effect to the language chosen by Congress, is fully consistent with section 3730(e)(4)'s indisputed [sic] objective of preventing 'parasitic' actions ...") I find that

the interpretation rendered by *McKenzie* and the other circuits cited in the majority opinion, to the effect that "based upon" means "supported by," to be an unnatural contortion of the language to reach a result that is not fairly supported by the statute itself. See *Id.* at 1349 ("We are unfamiliar with *any* usage, let alone a common one or a dictionary definition, that suggests that 'based upon' can mean 'supported by.' ") (emphasis in original).

This brings me to the second *McKenzie* ruling that I question: the judicial addition to (B) of a requirement "that, to be an original source, a relator must inform the government of the alleged fraud before the information has been publicly disclosed." *McKenzie,* 123 F.3d at 942. Although the first ruling interpreting "based upon" is at least arguable (albeit in my opinion an impermissible stretch), this wholesale addition to (B) seems to me completely unjustified.

The majority opinion correctly states that the statutory requirements to be an "original source" are as follows:

"Original source" is defined as an individual: (1) with direct and independent knowledge of the information on which the allegations are based; and (2) who has voluntarily provided the information to the government before filing an action under the FCA which is based upon the information. See § 3730(e)(4)(B).

But then, based on *McKenzie,* the majority adds the additional requirement that "a relator must also provide the government with the information upon which the allegations are based prior to any public disclosure." See *McKenzie,* 123 F.3d at 942.

Although there may well be good policy reasons to support this new requirement (as explained in both *McKenzie* (123 F.3d at 942–43) and *Findley* (105 F.3d at 685)), the judicial addition in fact runs flat into the face of the statutory language in (A). This is because (A) allows an "original source" relator to proceed *despite* prior public disclosure, which directly conflicts with the new requirement that a relator is barred if the alleged fraud is not disclosed to the government *before* the knowledge becomes public. Fur-

thermore, it is simply not the proper role of the courts to add additional terms by judicial fiat. *Brogan v. United States*, —— U.S. ——, ——–——, 118 S.Ct. 805, 811–12, 139 L.Ed.2d 830 (1998) ("Courts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so . . ."); *Nat'l Life and Accident Ins. Co. v. United States*, 524 F.2d 559, 560 (6th Cir. 1975) ("The Courts . . . do not have the power to repeal or amend the enactments of the legislature even though they may disagree with the result; rather it is their function to give the natural and plain meaning effect to statutes as passed by Congress."). This is the job of Congress. *Neal v. United States*, 516 U.S. 284, 296, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996) ("Congress, not this Court, has the responsibility for revising its statutes.").

Despite my misgivings as set forth above, the law of this circuit is clear that one panel of this court cannot overrule a decision by a prior panel. *Salmi v. Secretary of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985). I therefore concur in the result reached by the majority.