186 F.3d 717 (6th Cir. 1999)
 UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE, FRED M. BURNS, EX REL UNITED STATES OF AMERICA, PLAINTIFF-APPELLANT,
v.
A.D. ROE COMPANY, INC.; JIM MCCUBBINS, III; NORMAN LEIGH; KERRY WELCHER; CARL GRAF; STEVEN R. STAMBAUGH; RODGER CALL; PLANO CONSTRUCTION COMPANY; SWIFT ROOFING OF ELIZABETHTOWN, INC.; KOCH CORPORATION; WALLENDER PAINTING, DEFENDANTS-APPELLEES,
A & A MECHANICAL, INC., DEFENDANT,
ROMAC, INC., DEFENDANT-APPELLEE.
 No. 97-6044
 U.S. Court of Appeals, Sixth Circuit
 Argued: September 25, 1998
Decided: June 28, 1999
 
 1
 Appeal from the United States District Court for the Western District of Kentucky at Louisville. No. 94-00357-John G. Heyburn, II, District Judge.
 
 
 2
 Terry M. Cushing, William F. Campbell, Asst. U.S. Attorneys, Regina S. Edwards, Office of the U.S. Attorney, Louisville, KY, Michael F. Hertz, Jr. (argued and briefed), U.S. Department of Justice, Civil Division, Washington, DC, John C. Hoyle, Douglas N. Letter (briefed), Stephen J. Gripkey (briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, for Plaintiff-Appellee.
 
 
 3
 Peter F. Burns (briefed), Gary W. Fillingim (argued and briefed), Burns, Cunningham & Mackey, Mobile, AL, Michael E. Cohen, Bardstown, NY, for Plaintiff-Appellant.
 
 
 4
 George P. Parker, Sr. (briefed), George Bruce Stigger (argued and briefed), Parker & O'Connell, Louisville, KY, Michael T. Connelly, Connelly, Kaercher & Stamper, Louisville, KY, Max Parker, Murray, KY, James U. Smith, III, Smith & Smith, Louisville, KY, Ivan J. Frockt, Frockt & Klingman, Louisville, KY, for Defendants-Appellees.
 
 
 5
 Before: Norris, Batchelder, and Bright,* Circuit Judges.
 
 OPINION
 Alice M. Batchelder, Circuit Judge
 
 6
 Fred M. Burns appeals the district court's dismissal for lack of subject matter jurisdiction of his qui tam action brought against A.D. Roe Company and numerous other individuals and entities pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3730, alleging that the defendants had defrauded the United States Government by making false certifications on their work under federal contracts. The government has now supplemented the record with new information which bears directly on the question of subject matter jurisdiction; we therefore vacate the district court's order and remand this case for the district court to reconsider the issue in light of the new information and the analysis we set forth below.
 
 I. PROCEDURAL HISTORY
 
 7
 On June 23, 1994, pursuant to the FCA, Burns filed a Complaint and Disclosure of Material Facts in camera and under seal in the United States District Court for the Western District of Kentucky. The Complaint alleged that Defendants[1] submitted false and/or fraudulent claims to the government in order to secure payment for unacceptable materials, workmanship, testing, and performance in connection with the Defendants' performance of construction work known as the Phalanx Facility Modernization Project. On December 1, 1994, Burns filed a motion for leave to file an Amended Complaint and Disclosure Statement under seal. The government elected to intervene in the action and the Amended Complaint and Disclosure Statement were unsealed and served on the defendants. Various defendants filed answers only; others, including A.D. Roe Company, (collectively, "A.D. Roe") filed an Answer and Counter-Claim and an Amended Counter-claim; Burns filed Answers to each counterclaim.
 
 
 8
 The Defendants filed a Motion to Dismiss and for Summary Judgment, arguing that Burns was not a proper relator and the court did not have jurisdiction over his claims. Burns and the United States each responded to the Defendants' Motion. The United States took no position on Burns' status as relator, arguing only thatthe government should be able to continue the action should Burns be dismissed.
 
 
 9
 The district court concluded that it lacked subject matter jurisdiction over Burns's claims and granted the Defendants' Motion to Dismiss and for Summary Judgment, dismissing Burns's claims with prejudice but permitting the United States to continue to maintain the action against the Defendants. Burns's motion to reconsider the dismissal of his claims was denied, as was his motion for a Rule 54(b) order, and the case continued with the United States as Plaintiff. Eventually, the United States and the Defendants, with the exception of A & A Mechanical, settled the action, and the district court severed the United States' action against A & A Mechanical, dismissed the action with prejudice as to all other parties, and entered a final and appealable order approving the settlement. Burns filed a timely appeal.
 
 II. FACTS
 
 10
 In January 1992, the United States Department of the Navy contracted with A.D. Roe Company for A.D. Roe to serve as general contractor in connection with construction work on the Phalanx Facility Modernization Project (the "Project") at the Naval Ordnance Station, Louisville, Kentucky ("NOSL"). The other Defendants were all either officers and/or employees of A.D. Roe or subcontractors to A.D. Roe on the Project.
 
 
 11
 Burns was employed by the United States as the Construction Representative ("ConRep") in connection with the Project at NOSL at all relevant times except for a period between November 1993 and February 1994. During that time-frame, Burns was assigned to other work not connected with the Project. Burns, a civilian, has been trained at "a number of schools" concerning how to be a ConRep.
 
 
 12
 As ConRep, Burns was required to coordinate the activities of various contractors on the job. He was required to have extensive familiarity with the drawings and specifications for the job, including pricing, and the contractor quality control/contractor inspection ("CI") plan; he was responsible for making or arranging for inspections to be performed by the government; he made site checks for the purpose of performing spot checks to verify materials and equipment delivered to the site, and to review and evaluate, among other things, workmanship, testing procedures, submittal logs, and contractors' control systems; he prepared non-compliance notices where necessary; he was responsible for overseeing compliance with labor standards and safety provisions.
 
 
 13
 As the ConRep, Burns also had to coordinate with the Contractor's Construction Quality Control ("CQC") Representative. The CQC Representative was to make daily reports recording items such as, among other things, the number of persons working that particular day, the type of work, equipment on site, materials received, and contract deficiencies corrected. If the CQC Representative found deficiencies in the performance, he was required to issue "deficiency notices." Burns, as the Navy's ConRep, had the duty to review these reports and notices and to independently monitor the contractors' performances and issue contract non-compliance notices ("NCNs") for substandard performance. In his deposition, Burns admitted that it was his duty to report to his superiors "any violation or deviation or change to the requirements of the contract specifications." Burns' duties also included reviewing A.D. Roe's monthly requests for payment and recommending "whether or not the contractor's requests for payments [were] reasonable." Based on Burns' recommendations, the Navy could withhold payments from the contractors.
 
 
 14
 Burns's Amended Disclosure Statement states:
 
 
 15
 "Shortly after award of this contract, Burns observed that [the Defendants were] falsely certifying unacceptable materials, equipment, workmanship, inspection and testing on this project. Hefurther learned that employees of the [Defendant subcontractors] were not being paid the prevailing wages specified and that various subcontractors were providing false Weekly Certified Payroll Reports."
 
 
 16
 After he notified the Naval Investigative Service ("NIS") of his observations, the NIS initiated a criminal investigation. According to Agent Timothy W. Reeves, who was in charge of this investigation, Burns began disclosing his observations to Reeves before November 15, 1993. Burns helped Reeves prepare a subpoena issued to A.D. Roe and knew that Reeves was investigating the matter. Reeves was the custodian of all documents produced by A.D. Roe pursuant to a subpoena from NIS. Reeves claims that he never showed any of these documents to Burns, but disclosed the titles of the documents to Burns to see if the NIS had received all of the relevant information. Finally, Reeves states that to the best of his knowledge, no administrative report or investigation had been publicly disclosed before Burns filed suit against A.D. Roe.
 
 
 17
 Burns admits that he was "acting as Navy Construction Representative on this job [when he] saw numerous instances of what [he] perceived to be fraudulent conduct on the part of A.D. Roe personnel." Burns also claims that prior to filing this action, he reported all instances of fraud alleged in the complaint to either the NIS, the contracting officer, the assistant officer in charge of construction, or a naval detective.
 
 
 18
 During the period from November 1993 to February 1994 when Burns was not assigned to the Project, he reviewed and gathered documents to support his observations. He claims that during that time, he reviewed documents available to him as the Navy ConRep. In his deposition, however, he said that he requested and received documents pursuant to an FOIA request during that period.
 
 
 19
 The government has supplemented the record in this case, supplying information that appears to establish that, although Burns made several FOIA requests before he filed this action, he did not receive any information pursuant to these requests until September 30, 1994, several months after he filed suit.[2] Although the documents he received pursuant to his FOIA request were primarily construction-related documents that Burns himself had generated and signed or that A.D. Roe or other sub-contractors had prepared, they also included correspondence between the Navy and A.D. Roe. The documents consist of:
 
 
 20
 "1) fourteen construction contract non-compliance notices, each generated by Burns and forwarded to his supervisors;
 
 
 21
 2) twelve different invoices for payment submitted to the government by the Defendants, with attached letters and retention schedules from the government explaining deficiencies and amounts withheld from payment as a result of the deficiencies;
 
 
 22
 3) five construction deficiency notices generated by the Defendants; and
 
 
 23
 4) several letters and memoranda, including letters from subcontractors regarding the results of tests performed on the Project."
 
 III. STANDARD OF REVIEW
 
 24
 The district court appears to have dismissed Burns's claims for lack of subject matter jurisdiction under Rule 12(b)(1)[3]. If this were a facial attack onsubject matter jurisdiction, we would take the allegations in the complaint as true and construe them in the light most favorable to the non-moving party. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). However, this appeal concerns a factual attack[4] on subject matter jurisdiction; the district court was empowered to weigh the evidence and no presumptions apply as to the truthfulness of the relator's allegations. Id.
 
 
 25
 We will not set aside the factual findings of the district court unless they are clearly erroneous. Fed. R. Civ. P. 52(a); RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1135 (6th Cir. 1996). However, we review de novo the court's application of the law to those factual findings. Id.
 
 IV. JURISDICTION UNDER THE FALSE CLAIMS ACT
 
 26
 Section 3730(e)(4)(A) of the False Claims Act restricts the subject matter jurisdiction of the courts in relation to qui tam actions brought under that statute. It states:
 
 
 27
 "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."
 
 
 28
 In determining whether it has jurisdiction over a purported qui tam action, a court must consider: (1) whether the action is based on allegations that have been "publicly disclosed" under specific circumstances; and if so, (2) whether the relator qualifies as an "original source." This provision attempts to strike a balance between encouraging citizens to expose fraud and discouraging parasitic actions by opportunists. See United States ex rel. McKenzie v. BellSouth Telecomms., Inc., 123 F.3d 935, 943 (6th Cir. 1997), cert. denied, 118 S. Ct. 855 (1998).
 
 
 29
 The government urges us to rule that, as a matter of law, government employees cannot be relators, and more specifically, that they cannot be "original sources." We decline to address the government's argument in terms of "government employees" per se, but instead focus on the meanings of the statutory prongs[5].
 
 
 30
 A. "BASED UPON THE PUBLIC DISCLOSURE OF ALLEGATIONS OR TRANSACTIONS IN [AN]... ADMINISTRATIVE... REPORT, HEARING, AUDIT, OR INVESTIGATION"
 
 
 31
 The first jurisdictional prong under the FCA directs us to focus on four elements regarding the information upon which Burns relied in his allegations of fraud: Is Burns's action (1) based upon (2) allegations or transactions (3) that had been publicly disclosed (4) in a criminal, civil or administrative hearing, in a congressional, administrative or Government Accounting Office report, hearing, audit, or investigation, or from the news media? 31 U.S.C. § 3730(e)(4)(A); see also United States ex rel. Jones v. Horizon Healthcare Corp., 160 F.3d 326, 330 (6th Cir. 1998). We will begin with the element of public disclosure.
 
 1. Public Disclosures
 
 32
 Whether information received under FOIA requests constitutes publicly disclosed allegations or transactions under the FCA is an issue of first impression for this Circuit, although it has been addressed by other courts. See United States ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1519-20 (9th Cir. 1995) (public disclosure only upon request and receipt of FOIA information), vacated on other grounds, 520 U.S. 939 (1997); United States ex rel. Lamers v. City of Green Bay, 998 F. Supp. 971, 979-80 (E.D. Wis. 1998) (public disclosure upon receipt of information pursuant to FOIA requests), aff'd, 168 F.3d 1013 (7th Cir. 1999); United States ex rel. Eitel v. Reagan, 898 F. Supp. 734, 739 (D. Or. 1995) (FOIA information is publicly disclosed); United States ex rel. Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc., No. 94-CIV-2925, 1995 WL 693236, at *9 (S.D.N.Y. Nov. 22, 1995) (unpublished) (FOIA information not publicly disclosed).
 
 
 33
 In Schumer, the relator was a former manager at Hughes Aircraft Company, a federal contractor. Schumer, 63 F.3d at 1516. During his work there, Schumer was asked to prepare "commonality agreements" which allegedly violated the company's contracts under the F-14, F-15, F-18, and B-2 programs. Id. Schumer brought a qui tam action against Hughes based upon his own knowledge and three classified audits he had obtained that were not available to the public. Id. Hughes argued that because there were also unclassified audits--apparently containing at least some of the same information--that could have been obtained through FOIA, the allegations contained in them were "publicly disclosed." Id. In rejecting Hughes' argument, the Ninth Circuit noted that there is a distinction between "actual and theoretical availability," id. at 1520, and FOIA documents are not "actually" available until someone requests them and receives them, id. at 1519-20. The court also noted that the Supreme Court referred to "the disclosure of information in response to an FOIA request" in holding that FOIA disclosures were "public" within the meaning of the Consumer Product Safety Act. Id. (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 109 (1980)) (emphasis added).
 
 
 34
 We think the rationale of Schumer is sound. The district court here noted that "[d]efense department regulations require that once an FOIA request has been made, there must be an examination of the materials sought to determine if any information requires continued protection." It would be extreme to hold that all information for which someone might potentially make a FOIA request is "publicly disclosed." It would also be extreme, however, to hold that once a party actually receivesinformation pursuant to a FOIA request, there has not been "public disclosure." As the court noted in Schumer, it is the receipt of FOIA disclosures, like the filing of documents in court, that makes the information actually available to the public[6]. Cf. McKenzie, 123 F.3d at 939-40 (holding that documents filed with a court are publicly disclosed).
 
 2. Allegations or Transactions
 
 35
 The district court in the case at hand focused solely upon the "public disclosure" element of the jurisdictional test and failed to recognize that the public disclosure must be of "allegations or transactions" in particular settings, such as hearings, reports, investigations, or news. The qui tam action will not be barred because of public disclosure unless all of the elements of the jurisdictional bar are present.
 
 
 36
 This Court recently addressed the issue of what kind of publicly disclosed information qualifies as "allegations or transactions" under the FCA, Jones, 160 F.3d at 331-32, and adopted the approach followed by both the D.C. and Third Circuits. See id. (discussing United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 653-55 (D.C. Cir. 1994); United States ex rel. Dunleavy v. County of Delaware, 123 F.3d 734, 741 (3d Cir. 1997)). In Jones, we discussed the requirement that "allegations or transactions" must consist of more than simply innocuous information. Id. at 331 (discussing Springfield Terminal Ry. Co., 14 F.3d at 654). Before the 1986 amendments to the FCA, the FCA precluded suits based on "evidence or information" already in the government's possession. 31 U.S.C. § 3730(b)(4) (superseded). By changing the phrase to read "allegations or transactions," Congress clearly intended that the public disclosures at issue be of something more than simple information from which no one could deduce that fraud had occurred. See Dunleavy, 123 F.3d at 740. The Third Circuit interpreted this language to mean that the disclosures must reveal either "the allegations or the elements of the underlying fraudulent transaction." Id.; accord United States ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 686-87 (D.C. Cir.), cert. denied, 118 S. Ct. 172 (1997); Springfield Terminal Ry. Co., 14 F.3d at 653-55.
 
 
 37
 In Jones we said, "if X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the Conclusion that fraud has been committed." Jones, 160 F.3d at 331 (quoting Springfield Terminal Ry. Co., 14 F.3d at 654). We also noted in Jones that publicly disclosed documents need not use the word "fraud," but need merely to disclose information which creates "an inference of impropriety." Jones, 160 F.3d at 332. In the case before us today, the issue is whether there were publicly disclosed documents that contained information as to both the actual circumstances of the construction being done on the Phalanx Project and the circumstances as they were being represented to the government by various contractors, and whether inferences of fraud reasonably could have been drawn from the information contained in those documents.
 
 
 38
 3. Source of the Public Disclosure of the Allegations or Transactions
 
 
 39
 Finally, information that would qualify as allegations or transactions must have been publicly disclosed "in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). In McKenzie, this Court noted that the filing of documents with a court constitutes disclosure of allegations "in a civil hearing." McKenzie, 123 F.3d at 939. In this case, A.D. Roe contends that because the information received by Burns through his FOIA requests consisted of documents prepared entirely or in part by the government, it is information disclosed in "administrative... reports,... audits or investigations" under the FCA.
 
 
 40
 This issue also has heretofore not been addressed by this Court. Courts that have considered the issue of sources of public disclosure note that the list of sources set out in the statute is exhaustive. Dunleavy, 123 F.3d at 744; United States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 323-24 (2d Cir. 1992); United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1499-1500 (11th Cir. 1991). If the information obtained by the relator does not constitute allegations or transactions from one of these sources, then the statute did not mean to exclude claims on that basis. In Dunleavy, the court concluded that "administrative reports" referred only to reports produced by federal sources. Dunleavy, 123 F.3d at 744-45. Relying on the doctrine of noscitur a sociis to gather the meaning of "administrative reports" from the words surrounding that term in the statute, id. at 745, the court noted that Congress and the General Accounting Office--the other terms surrounding "administrative"--are entities of the federal government; thus, it is likely that "administrative" referred to reports issuing from federal government agencies. Id. The Eleventh Circuit in Williams was more specific in requiring that, to trigger the jurisdictional bar, the report actually had to be issued by an administrative agency, not merely by an employee of the agency. Williams, 931 F.2d at 1500.
 
 4. "Based Upon" Public Disclosures
 
 41
 The final element of the first prong of the jurisdictional bar is whether the action is "based upon" the publicly disclosed allegations or transactions. We have held that this question requires an inquiry into whether the allegations are "supported by" the public disclosures. Jones, 160 F.3d at 332; McKenzie, 123 F.3d at 940. The allegations of the qui tam action are supported by the publicly disclosed allegations if there is "substantial identity" between the two. Jones, 160 F.3d at 332.
 
 B. THE "ORIGINAL SOURCE" EXCEPTION
 
 42
 Only if the district court determines that all four elements of the first prong of the jurisdictional bar have been satisfied--i.e., the information upon which the relator based the allegations of his qui tam action was publicly disclosed as defined in the FCA--must it reach the second prong of the jurisdictional bar, and inquire whether the relator was the "original source"[7] of the information.
 
 V. THE DISTRICT COURT'S FINDINGS
 
 43
 The district court held that it lacked subject matter jurisdiction over Burns's qui tam action. The court found that Burns had received the documents from his FOIA requests prior to his filing this action, that the information in the FOIA documents was thus publicly disclosed, and that he had based his claim on these FOIA documents. Finally, the district court found that Burns was not the "original source" of the information. The court therefore dismissed Burns's action with prejudice.
 
 
 44
 The information with which the government has supplemented the record, however, appears to demonstrate that Burns did not receive any of the FOIA documents until after he had filed his action. The district court did not address the requirements of the jurisdictional bar that the information, even if publicly disclosed, was in fact "allegations or transactions" disclosed "in a criminal, civil, or administrative hearing in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." 31 U.S.C. § 3730(e)(4)(A). Although the court held that Burns had based his action on the publicly disclosed FOIA information, the court made no specific factual findings in that regard which we can review.
 
 VI. CONCLUSION
 
 45
 Accordingly, we VACATE the district court's judgment dismissing Burns's complaint and REMAND for further proceedings consistent with this opinion.
 
 
 
 NOTES:
 
 
 *
 The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 
 
 [1]
 In addition to A.D. Roe Company, Inc., the Defendants included: Jim McCubbins, III, Norman Leigh, Kerry Welcher, Carl Graf, Steven R. Stambaugh, Rodger Call, Plano Construction Company, Swift Roofing of Elizabethtown, Inc., Koch Corporation, Wallender Painting, A & A Mechanical, Inc., and Romac, Inc.
 
 
 [2]
 According to the supplemental information, the documents requested by Burns in request 9402-04 were mailed to him on October 13, 1994; request 9402-17 documents were mailed on September 30, 1994; other documents from request 9402-04 were mailed on October 31, 1994; request 9403-12 documents were mailed on November 23, 1994; and request 9602-04 documents were mailed on February 27, 1996.
 
 
 [3]
 The parties and the court below characterized the United States's motion as one for dismissal and summary judgment, and the parties have similarly characterized it here. The defendants' motion and the court's opinion below, however, dealt only with the claims of the relator Burns and the issue of subject matter jurisdiction. We conclude that the district court treated the motion to dismiss as a factual challenge under Rule 12(b)(1).
 
 
 [4]
 The court below did not explicitly state that it was relying on material extrinsic to the pleadings to make its ruling, but it is clear from the parties' briefs and the court's opinion that the court considered party depositions and affidavits.
 
 
 [5]
 Before the 1986 amendments to the False Claims Act, government employees were effectively prohibited from bringing claims under the qui tam provision. The Act precluded jurisdiction where the action was based upon information in the possession of the United States or any of its employees at the time of the suit. However, the 1986 amendments revised the qui tam provision to allow "any private person" to bring such a suit. It is not clear whether Congress intended by the amendments to allow government employees to bring suit. We note, however, that no court has accepted the argument that government employees per se can never be relators in a qui tam action. In earlier cases, the government argued that government employees cannot be relators because they have "publicly disclosed" to themselves as private individuals information acquired as government employees. All courts faced with this argument have rejected it. See, e.g., United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1500-01 (11th Cir. 1991); United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1419-20 (9th Cir. 1991); United States ex rel. LeBlanc v. Raytheon Co., 913 F.2d 17, 20 (1st Cir. 1990); United States ex rel. Givler v. Smith, 760 F. Supp. 72, 75 (E.D. Pa. 1991); United States v. CAC-Ramsay, Inc., 744 F. Supp. 1158, 1161 (S.D. Fla. 1990), aff'd, 963 F.2d 384 (11th Cir. 1992). One court noted that such a dual status of government employees "requires the assumption that government employees lead schizophrenic lives and can publicly disclose information to themselves." LeBlanc, 913 F.2d at 20.
 
 
 [6]
 Although a plausible distinction might be drawn between FOIA information that has been disclosed only to the creator of the documents and FOIA information that has been disclosed to others, this distinction would not be valid under McKenzie. McKenzie appears to recognize that once the documents become "publicly available," they have been publicly disclosed for purposes of the FCA. McKenzie, 123 F.3d at 939 (noting that "any information disclosed through civil litigation and on file with the clerks office should be considered a public disclosure of allegations in a civil hearing...."). Thus, even if no one except the person who created a particular document actually made a FOIA request for it, the document still becomes "publicly available" once it has been cleared for release.
 
 
 [7]
 The False Claims Act, in section 3730(e)(4)(B) defines an original source as: [A]n individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information. Thus, a relator must establish two elements to prove he is an original source: both (1) direct and independent knowledge of the information, as well as (2) voluntary provision of the information to the government before filing suit.