*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0369p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

RUSSELL E. DINGLE, THOMAS L. REMPFER, UNITED
STATES OF AMERICA, EX REL.,
                            *Plaintiffs-Appellants,*

      *v.*

BIOPORT CORPORATION, ROBERT MYERS,
                            *Defendants-Appellees.*

No. 03-1841

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 00-00124—Gordon J. Quist, District Judge.

Argued:  September 17, 2004

Decided and Filed:  October 28, 2004

Before:  KENNEDY and COOK, Circuit Judges; HOOD, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:**  Kenneth T. Levine, NELSON LEVINE DeLUCA & HORST, Blue Bell, Pennsylvania, for
Appellants.  Ronald H. Clark, ARENT FOX PLLC, Washington, D.C., for Appellees.  **ON BRIEF:**
Kenneth T. Levine, NELSON LEVINE DeLUCA & HORST, Blue Bell, Pennsylvania, for Appellants.
Ronald H. Clark, D. Jacques Smith, Brian C. Lansing, ARENT FOX PLLC, Washington, D.C., for
Appellees.

_____

**OPINION**

_____

      KENNEDY, Circuit Judge.  Plaintiffs/Relators Russell E. Dingle and Thomas L. Rempfer
("Relators") appeal the dismissal of their qui tam false claims action for lack of jurisdiction due to the public
disclosure bar.  Because we find no error in the district court's decision, we **AFFIRM** it.

---

[*]The Honorable Joseph M. Hood, United States District Judge from the Eastern District of Kentucky, sitting by designation.

## BACKGROUND

Relators filed this *qui tam* false claims action in district court in October of 2000 alleging that the BioPort Corporation ("BioPort") made false statements and claims to the U.S. government when it supplied anthrax vaccines to the federal government that were manufactured in a manner inconsistent with the process approved by the Food and Drug Administration and inconsistent with FDA regulations. The amended complaint specifically alleges that BioPort changed the type of filter from a "stintered glass filter" to a "low-protein-binding nylon membrane filter" and that this change put BioPort in breach of FDA regulations, the FDA approval process, Public Health Service regulations, and BioPort's contract with the federal government.

BioPort moved to dismiss the complaint on the grounds that public disclosures in the form of congressional testimony on the Anthrax vaccine, newspaper articles on the subject, and internet web sites, eliminated the district court's jurisdiction over the *qui tam* action pursuant to 31 U.S.C. § 3730(e)(4)(a)[1]. BioPort also argued that Relators did not fall under the "original source" exception created by § 3730(e)(4)(b).[2]

BioPort provided the district court the materials it argued were public disclosures under the statute and requested that the district judge take judicial notice of the materials. The district judge took judicial notice of congressional testimony, including congressional testimony by Marc S. Zaid (an attorney for a serviceman that refused to take the anthrax vaccine) and testimony of Kwai-Cheung Chan (Director of Special Studies and Evaluations for the National Security and International Affairs Division of the General Accounting Office), a House Committee on Government Reform report entitled *The Department of Defense Anthrax Vaccine Immunization Program: Unproven Force Protection*, and a newspaper article from the Lansing State Journal entitled *Documents Hold Anthrax Secrets*.

All of the judicially noticed items discussed different aspects of the controversy surrounding the vaccination of U.S. servicemen and servicewomen, and portions of each source discussed problems with the production of the vaccine at the BioPort facility, the sole facility producing anthrax vaccine in the United States. Defendant argued that this discussion of problems with the vaccine could lead one to draw an inference that BioPort defrauded the government. Relators countered arguing that the disclosures did not deal with the specific problems (namely the change in the filters) advanced by Relators in their complaint or that the disclosures did not otherwise qualify under the "allegations or transactions" test used by this Court.

The district court used these documents to determine that a public disclosure had occurred, that the disclosure was of the allegations or transactions that formed the basis of Relators' complaint, that the complaint was based on the public disclosure within the meaning of § 3730(e)(4)(a), and that Relators were not original sources under § 3730(e)(4)(b). *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp.2d 968 (W.D. Mich. 2003) (relying on *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 330 (6th Cir. 1998)). Based on these holdings, the district court determined that it did not have jurisdiction

---

[1] Section 3730(e)(4)(a) reads:

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [sic] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is the original source of the information.

[2] Section 3730(e)(4)(b) reads:

For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

over the *qui tam* action and dismissed the complaint. *Id.* at 980. Relators appeal two aspects of the district court's ruling. First, Relators argue that the district court interpreted the meaning of the phrase "allegations or transactions" too broadly and in doing so, impermissibly lumped their claim in with the allegations or transactions described in the disclosures. Second, Relators ask this Court to reconsider its understanding of "based upon" and adopt a meaning Relators believe to be better in line with congressional intent.

## ANALYSIS

### A.          Standard of Review

We review the district court's dismissal for lack of jurisdiction and its application of the facts to the law *de novo*. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). However, we review the district court's factual findings for clear error. *United States v. A.D. Roe Co.*, 186 F.3d 717, 722 (6th Cir. 1999).

### B.          "Allegations or Transactions"

Section 3730(e)(4)(a) denies jurisdiction in *qui tam* actions when publicly disclosed allegations or transactions form the basis for the complaint. 31 U.S.C. §3730(e)(4)(a). An allegation "connotes a conclusory statement implying the existence of provable supporting facts." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 653-54 (D.C. Cir. 1994). A transaction is best represented by a formula created by the DC Circuit:

> If $X + Y = Z$, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.
>
> \*\*\*
>
> [Q]ui tam actions are barred only when enough information exists in the public domain to expose the fradulent transaction (the combination of X and Y), or the allegation of fraud (Z). *Id.* at 655 (adopted by *Jones*, 160 F.3d at 331).

Both the D.C. Circuit and this Circuit went on to further describe X as the true state of facts and Y as the misrepresented state of facts. *A.D. Roe,* 186 F.3d. at 725; *Jones*, 160 F.3d at 331; *Springfield*, 14 F.3d at 654. Either a public disclosure which includes an allegation of fraud, or a public disclosure that describes a transaction that includes both the state of facts as they are plus the misrepresented state of facts must be present to eliminate jurisdiction in a case.

This Circuit has addressed the question of jurisdiction in *qui tam* actions several times. In *McKenzie*, the plaintiff sued BellSouth alleging that it defrauded the government by falsifying trouble reports to make it appear that lines were repaired within 24 hours or that an exception to the 24 hour repair rule applied. *United States ex rel. McKenzie v. BellSouth Telecomm., Inc.*, 123 F.3d 935, 937 (6th Cir. 1997). McKenzie alleged that BellSouth was falsifying these reports to avoid having to refund money to the government and other customers. *Id.* The district court denied jurisdiction based on filings in two other lawsuits (a tort action that alleged a similar fraud and another *qui tam* action containing similar claims against BellSouth subsidiaries in other parts of the country) and the media publicity surrounding those suits. *Id.* Although the lawsuits and the publicity did not exactly mirror McKenzie's complaint, this Court agreed that the allegations were publicly disclosed prior to the filing of the suit. *Id.* at 940. In *Jones*, this Circuit reaffirmed its holding in *McKenzie* by holding that Jones' Whistleblower action, which was filed prior to her *qui tam* action, presented sufficient facts to create an inference of wrongdoing on the part of the defendant. *Jones*, 160 F.3d at 332.

In *Springfield*, the plaintiff alleged that an arbitrator in a labor dispute fraudulently billed the government for days on which he did not work on the dispute. *Springfield*, 14 F.3d at 648. The arbitrator moved to dismiss the complaint on the basis that his pay vouchers and telephone records, which had been publicly disclosed, served to bar the *qui tam* action. *Id.* at 648-49. The district court agreed, but the D.C. Circuit reversed reasoning that the pay vouchers and the telephone records by themselves only met the requirement that the government knew about the misrepresented state of affairs. *Id.* at 656. Because fraud also requires a showing of an actual state of affairs, and the government had no way of knowing from the facially valid vouchers that the arbitrator did not work on the days for which he submitted payment requests, the *qui tam* action was not barred by those public disclosures. *Id.*

Finally, in *Fine*, a Relator filed suit against Sandia National laboratory alleging that Sandia improperly "taxed" its nuclear waste fund to provide research and development funding for its discretionary budget. *United States ex rel. Fine v. Sandia Corp*., 70 F.3d 568, 569 (10th Cir. 1995). The Tenth Circuit agreed that his suit was barred based on a public disclosure (in this case, a GAO report) that indicated that, in general, DOE laboratories were "taxing" nuclear waste accounts to fund R&D activities. *Id.* at 571. The Tenth Circuit determined that despite the fact that Fine's action alleged the Sandia taxing with more specificity, the fact that the GAO report described the DOE lab practice in general sufficiently put the government on notice as to the potential problem at Sandia. *Id.* Therefore, the Tenth Circuit determined that the allegations or transactions described in the public disclosure formed the basis for Fine's complaint and barred his action. *Id.*

In this case, the district court found that the testimony of witnesses Zaid and Chan, the House report, and the Lansing State Journal article were public disclosures (a fact that relator does not contest on appeal) and that those public disclosures contained both allegations and reports of transactions that formed the basis of Relators' complaint. *Dingle*, 270 F. Supp. 2d at 976-77. The district court specifically pointed to the Zaid testimony in which Mr. Zaid told congress that "...the vaccine may not be the same one approved by the FDA." *Id.* (quoting Zaid Testimony, Defs.' Mem. Supp. Mot. Dismiss Ex. 2). It also pointed to the LANSING STATE JOURNAL article, which stated that changes had been made to both the filters and the containers in which the vaccine was produced. *Id.* (citing A.J. Evenson, *Documents Hold Anthrax Secrets*, Lansing State Journal, Aug. 25, 2000, at 1A, 7A, Br. Supp. Mot. Dismiss Amend. Compl. Ex. D). Finally, the district court referenced the house report, which noted that the Lansing plant had been cited numerous times for deviating from the FDA regulations and problems that arose during potency testing. *Id.* (citing House Report, Defs.' Reply Br. Ex. C at 7, 12, 42–44, 61.). The court reasoned that all of these public disclosures allowed it to draw an "inference of fraud" and dismiss the case for lack of jurisdiction. *Id.*

Relators argue that the public disclosures described above do not describe the same "allegations or transactions" as they allege in their complaint. They distinguish the Zaid testimony and the House report as relating to the injection of Squalene or other issues unrelated to the change of filters alleged in their complaint. Relators also argue that the Lansing State Journal article is not a public disclosure of the allegations or transactions on which their complaint is based because it only mentions the filter changes (the actual state of facts, or the X) without mentioning that BioPort had not had these changes approved by the FDA (the misrepresented state of facts or the Y). Relators also argue that the article presented no allegation of fraud (Z). Finally, Relators argue that they were aware of the manufacturing changes before the article was written. Relators argument on this point is spurious as it is irrelevant that they knew the information when the Lansing State Journal published its article. The only relevant point is that the government had available the information in the article at the point that the article was published in August 2000, before Relators filed their suit in October.

We agree with Relators that the Lansing State Journal article, standing alone, does not present the state of affairs as they are, as well as the misrepresented state of affairs (X + Y), nor does it make an allegation of fraud (Z). It does, however, present the state of affairs as they are (X). The district court found that one could infer from the article that the vaccine being produced and sold after the changes was different from the one approved by the FDA.

Whether this inference is justified is irrelevant, because the House report supplies the other necessary element in the $X + Y = Z$ equation. Despite the fact that the House report does not specify in great detail what type of problem the FDA identified, the very fact that the House report mentioned that the FDA cited BioPort for "deviations" from the Federal Food, Drug, and Cosmetic Act allows a reader to strongly infer that BioPort was not producing its vaccine in line with the FDA requirements. Thus, it forms the necessary Y to the Lansing State Journal article's X in that the House report provides evidence of misrepresentation (as found by the FDA) and the Lansing State Journal article provides the actual state of affairs. The fact that the information comes from different disclosures is irrelevant. All that is required is that public disclosures put the government on notice to the possibility of fraud. These two sources, in combination, certainly achieve that requirement.

The other public disclosure that the district court relied on seems to fall into the allegations category (the Z in the equation). The Zaid testimony alleges fraud. This fact is true, regardless of whether Zaid alleges fraud with respect to different aspects of the vaccine manufacturing process. Zaid informed the government in his testimony that the vaccine may not be the same one approved by the FDA due to modifications. Though he did no use the words fraud and though he may have been talking about a different modification than the one alleged by Relators[3] these points are not relevant here. The words fraud or allegations need not appear in the disclosure for it to qualify. *Jones*, 160 F.3d at 332. Nor does the allegation have to be exactly what Relators' allege. *McKenzie*, 123 F.3d at 940. So long as the government is put on notice to the potential presence of fraud, even if the fraud is slightly different than the one alleged in the complaint, the *qui tam* action is not needed.

This holding is in line with our holdings in *McKenzie* and *Jones* and the Tenth Circuit's holding in *Fine* where the public disclosures were all slightly different, but still sufficient to put the government on notice as to the possibility of fraud. This case differs from the *Springfield* case, however, because unlike in *Springfield*, both the X and the Y are present here (albeit in different sources), or at the very least, the Z is present with sufficient particularity.

Relators construct a hypothetical in which they argue that a suit that alleges fraud on the part of a manufacturer with regard to a car's seats should not preclude a suit alleging manufacturer fraud with respect to the same car's engine. While we agree that if both suits alleged the respective frauds (and only those frauds) with particularity, the one suit would likely not bar the other, that hypothetical scenario is not present here. By analogy, the scenario present here includes multiple general allegations of fraud by public sources with respect to the car and a more specific claim of fraud by Relators with respect to the engine of the car. Allowing such a suit would allow potential *qui tam* plaintiff's to avoid the public disclosure bar by pleading their complaints with more and more detailed factual allegations slightly different from more general allegations already publicly disclosed. Given that the purpose of the *qui tam* action is to prosecute fraud of which the government is unaware, such a result would not advance Congress' purpose, and would only multiply the number of parasitic *qui tam* actions pursued by plaintiffs. *Springfield*, 14 F.3d at 651. *See also McKenzie*, 123 F.3d at 938.

Finally, it is true, as Relator's claim, that general and unsupported allegations of fraud will often not be enough to bar a *qui tam* action as those allegations would be tantamount to "simply innocuous information." *A.D. Roe*, 186 F.3d at 724. In this case, however, the allegations and transactions discussed in the public disclosures are sufficiently definite to give the government enough information about possible fraud as they specifically mention the manufacturing process as well as the filters themselves. Therefore,

---

[3]Relators argues that Zaid was discussing Squalene rather than a filter change. Although we have no reason to doubt Relators on this point, the quote as recorded does not mention Squalene. It just contains an allegation that the vaccine is not being produced in a manner consistent with FDA approved processes. As such, that quote alone is enough to "sufficiently alert the government" to the possibility of fraud. *Fine*, 70 F.3d at 571; *Springfield*, 14 F.3d at 655 ("to set government investigators on the trail of fraud").

this *qui tam* action is unnecessary and the public disclosure bar should remove jurisdiction from the district court.

C.      "Based upon"

While recognizing that the district court interpreted "based upon" in line with this court's holding in *McKenzie* where we adopted the rule that "based upon" means "supported by" for the purposes of this statute, Relators seek to challenge that interpretation.  They do not directly challenge the district court's interpretation or findings on this point, rather they ask this panel to overturn our prior decision and interpret "based upon" to mean "derived from" in line with some other circuits.  Relators advance several arguments to support their position.

Regardless of whether these arguments have merit, we cannot do as Relators request.  "A panel of this Court cannot overrule the decision of another panel.  The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).  Relators cite no such authority and this Court could find none that would compel us to disturb the decision of the prior panel.  As a result, we decline to rule as Relators request.

## CONCLUSION

We **AFFIRM** the judgment of the district court.