RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0064p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA ex rel. ADVOCATES
FOR BASIC LEGAL EQUALITY, INC.,

     *Relator-Appellant*,

  *v.*

U.S. BANK, N.A.,

     *Defendant-Appellee*.

No. 15-3654

_____

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:13-cv-00704—Jack Zouhary, District Judge.

Argued: March 9, 2016

Decided and Filed: March 14, 2016

Before: MERRITT, GIBBONS, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Daniel Aguilar, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae. Sasha Samberg-Champion, RELMAN, DANE & COLFAX PLLC, Washington, D.C., for Appellant. Andrew W. Schilling, BUCKLEYSANDLER LLP, New York, New York, for Appellee. **ON BRIEF:** Sasha Samberg-Champion, Stephen M. Dane, Michael G. Allen, RELMAN, DANE & COLFAX PLLC, Washington, D.C., Aneel L. Chablani, George A. Thomas, ADVOCATES FOR BASIC LEGAL EQUALITY, INC., Toledo, Ohio, for Appellant. Andrew W. Schilling, John B. Williams III, Matthew E. Newman, BUCKLEYSANDLER LLP, New York, New York, for Appellee. Michael S. Raab, Joshua Waldman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

---

**OPINION**

---

SUTTON, Circuit Judge.  Suing on behalf of the United States, Advocates for Basic Legal Equality ("ABLE" for short) contends that U.S. Bank violated the False Claims Act when it requested federally backed insurance payments after several borrowers defaulted on their loans.  To state a *qui tam* claim, a plaintiff must show that it uncovered the claim—that the factual basis of the claim was not publicly disclosed before the plaintiff sued.  Otherwise, only the government can vindicate the claim in a lawsuit in its own name.  Because ABLE did not satisfy this requirement, we affirm the district court's decision to reject this claim as a matter of law.

U.S. Bank participates in a mortgage insurance program, backed by the Federal Housing Administration, that encourages banks to lend money to high-risk borrowers.  The insurance covers losses caused by a borrower who defaults on a loan.  To participate in the program, U.S. Bank had to certify that it would meet certain requirements, and each time it requested an insurance payment U.S. Bank had to certify that it had followed the requirements.  *See* 24 C.F.R. § 203.500.  The key requirement for our purposes is that U.S. Bank would engage in "loss mitigation" measures, such as attempting to arrange a face-to-face meeting with the defaulting borrower, before foreclosing.  *See id.* §§ 203.604–.606.

According to ABLE, an Ohio non-profit organization that advances the interests of low-income individuals, U.S. Bank did not satisfy the loss mitigation requirement.  It contends that U.S. Bank promised that it would engage in loss mitigation, failed to do so, then lied about the failure.  ABLE points to three foreclosures where this happened and claims that they demonstrate a pattern—indeed a widespread pattern, one that purportedly shows that U.S. Bank wrongfully foreclosed on 22,000 homes and wrongfully collected $2.3 billion in federal insurance benefits.  ABLE filed this lawsuit on behalf of itself and the United States claiming that U.S. Bank violated the False Claims Act.  *See* 31 U.S.C. § 3729.  The Department of Justice declined to intervene.  *See id.* § 3730(b)(2), (4).

In handling this case, the district court issued two relevant decisions on the pleadings.  It decided that two of ABLE's claims stated a cognizable violation of the False Claims Act.  *United States v. U.S. Bank, N.A.*, No. 3:13 CV 704, 2015 WL 2238660, at *4–7 (N.D. Ohio May 12, 2015).  And it decided that ABLE premised its case on information that had already been publicly disclosed, precluding it from bringing the lawsuit as a *qui tam* plaintiff.  *Id.* at *8–11.

On appeal, the parties join debate over each holding.  Because we agree with the district court's second holding—the public disclosure holding—we need not consider its first.  That may be for the best, as the Supreme Court recently granted certiorari in a similar case under the False Claims Act, the resolution of which may affect our precedents governing ABLE's ability to state a claim.  *See Universal Health Servs., Inc. v. United States*, 136 S. Ct. 582 (2015) (mem.).

A claimant may establish eligibility to bring a *qui tam* lawsuit on one of two grounds: (1) that the factual premise of its claim was not publicly disclosed before it filed the lawsuit, or (2) even if it was, that the claimant was the original source of the information.  31 U.S.C. § 3730(e)(4).  Here's how the statute defines a prior public disclosure:  "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media."  *Id.* § 3730(e)(4)(A).  Here's how the statute in relevant part defines someone who is an original source:  one "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions."  *Id.* § 3730(e)(4)(B).

These formulations of "public disclosure" and "original source," it's worth adding, reflect current law.  The Patient Protection and Affordable Care Act became law on March 23, 2010.  In addition to its better-known provisions, the Act amended the False Claims Act.  *Compare* Pub. L. No. 111-148, § 10104, 124 Stat. 119, 901–02 (2010), *with* Pub. L. No. 99-562, § 3, 100 Stat. 3153, 3157 (1986).  The 2010 amendments made two pertinent changes.  They prevented federal courts from considering state court actions when determining whether there has been a public disclosure, and they introduced "materially adds" to the original source definition.

The new amendments, it is true, are not retroactive. *See Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010). In this instance, some of the allegedly fraudulent acts occurred before the 2010 amendments, some happened after, and ABLE did not file this lawsuit until 2013. ABLE urges us to apply the new, more lenient requirements for filing a complaint under the False Claims Act to all of its claims. Because ABLE's claims fail even under the new requirements, we see no problem in doing so.

This leaves us with two pertinent questions: Were U.S. Bank's alleged false claims publicly disclosed before ABLE filed this lawsuit? And, if so, was ABLE an original source? Because the answers to these questions are yes and no (respectively), we affirm.

*Public disclosure.* "[T]he public disclosure bar provides a broa[d] sweep," the Supreme Court has told us, in part because "[t]he phrase 'allegations or transactions' . . . [has] a broad meaning." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011) (quotation omitted). Unfortunately for ABLE, the "allegations or transactions" on which it premises this claim were publicly disclosed before it filed this lawsuit. ABLE's case rests on two factual allegations: that U.S. Bank (1) failed to take required loss mitigation measures before foreclosing and (2) committed fraud by falsely certifying, on various forms, that it would and did engage in those loss mitigation measures.

At least two sources publicly disclosed the first allegation. One was a 2011 consent order between U.S. Bank and the federal government, which qualifies as "a Federal criminal, civil, or administrative hearing in which the Government . . . [was] a party." 31 U.S.C. § 3730(e)(4)(A)(i). That consent order required U.S. Bank to implement a wide variety of reforms, including measures "to ensure [that] reasonable and good faith efforts, consistent with applicable Legal Requirements, *are engaged in Loss Mitigation* and foreclosure prevention for delinquent loans." *In re U.S. Bank Nat'l Ass'n*, AA-EC-11-18, Consent Order (OCC Apr. 13, 2011), at 19 (emphasis added), *available at* http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47j.pdf; *see also id.* at 5–9, 16, 18–22. The other was a 2011 foreclosure practices review from three federal agencies (also a public disclosure, *see* 31 U.S.C. § 3730(e)(4)(A)(ii)), which noted that various banks, including U.S. Bank, had failed to take a variety of loss mitigation measures. The report emphasized the need to require banks to make

"reasonable and good faith efforts, consistent with applicable law and contracts, to engage in loss mitigation and foreclosure prevention for delinquent loans where appropriate." R. 25-3 at 17. It also promised to push industry-wide reforms to "ensure borrowers are offered appropriate loss-mitigation options." *Id.* at 19. The consent judgment and report amply disclose the allegation that U.S. Bank failed to engage in appropriate loss mitigation measures—the first premise of ABLE's claim.

The second premise—that U.S. Bank committed fraud when it made false certifications about whether it had engaged in loss mitigation—also was publicly disclosed. If the disclosure "puts the government on notice of the 'possibility of fraud' surrounding the . . . transaction, the prior disclosure is sufficient." *U.S. ex rel. Gilligan v. Medtronic, Inc.*, 403 F.3d 386, 390–91 (6th Cir. 2005) (quotation omitted). The consent order did just that. It required U.S. Bank to implement a compliance program, including "processes to review and approve standardized affidavits and declarations for each jurisdiction . . . to ensure compliance with applicable laws, rules and court procedures." *In re U.S. Bank*, *supra*, at 7. This language put the government (and everyone else) on notice that U.S. Bank allegedly had filed non-compliant documents— documents that could supply the foundation for a fraud claim. A 2011 news article discussing the consent order explained that U.S. Bank "engaged in a pattern of misconduct and negligence." R. 25-2 at 36 (quotation omitted). And the publicly available 2011 foreclosure practices review found that a majority of the banks reviewed "had inadequate affidavit . . . processes that did not ensure proper attestation (or verification) of the underlying documents." R. 25-3 at 11. Taken together, all of this put the government on notice of the possibility of fraud. *See Gilligan*, 403 F.3d at 390–91.

*Original source.* To be an original source, the claimant must have knowledge that "materially adds to" the public disclosure. 31 U.S.C. § 3730(e)(4)(B). Materiality in this setting requires the claimant to show it had information "[o]f such a nature that knowledge of the item would affect a person's decision-making," is "significant," or is "essential." Black's Law Dictionary 1124 (10th ed. 2014). ABLE points to three incidents that purportedly show that U.S. Bank failed to engage in appropriate loss mitigation measures. But the incidents do not materially add to the thousands of prior problematic foreclosures already disclosed. *See In re*

*U.S. Bank, supra*, at 2. There is nothing significant or new about the nature of these foreclosures other than proof that there were others like them. That doesn't add anything, materially or otherwise. How, moreover, could we say that these *three* incidents affected the government's decision-making? It *already* tried to remedy U.S. Bank's bad foreclosure practices in its 2011 consent decree. ABLE notably offers no proof to the contrary. Because ABLE did not provide information that materially adds to the prior publicly disclosed information, it is not an original source.

ABLE offers two responses, both unconvincing. It first says that there was no prior public disclosure because neither the consent order nor the foreclosure practices review dealt with loss mitigation related to the types of loans here: federally insured mortgages. It's true that the consent order and the report do not directly mention federally insured mortgages. But that is because they do not single out *any* type of mortgage. Both documents, as the foreclosure practices review attests, cover a swath of "loss mitigation and foreclosure prevention" procedures that U.S. Bank failed to carry out in a manner "consistent with applicable law and contracts." R. 25-3 at 17. That is what ABLE alleges in this case: U.S. Bank did not engage in loss mitigation as required by law. Under the "wide-reaching public disclosure bar," *Kirk*, 563 U.S. at 408, we have no problem finding that the broader, publicly disclosed category (a variety of mortgages) encompasses ABLE's narrower category (federally insured mortgages). Otherwise, one could always—or at least nearly always—evade the public disclosure requirement by focusing the allegations in a second action on sub-classes of potential claims covered by the initial action. That's not how it works. As we have explained, "additional details are insufficient to avoid our broad construction of the public disclosure bar, which precludes individuals who base *any part* of their allegations on publicly disclosed information from bringing a later *qui tam* action." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 975 (6th Cir. 2005); *see Dingle v. Bioport Corp.*, 388 F.3d 209, 215 (6th Cir. 2004) (explaining that a *qui tam* suit would be barred when the public disclosures "include[d] multiple general allegations of fraud by public sources with respect to [a] car" and the *qui tam* suit involved "a more specific claim of fraud . . . with respect to the engine of the car"); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 646 (6th Cir. 2003) (holding that there was prior public disclosure even when the *qui tam* suit "contain[ed] more detailed allegations about the fraud[]").

The same problem exists with respect to ABLE's claim that the consent decree and foreclosure practices review dealt with loss mitigation measures in general, not with specific types of loss mitigation measures, such as face-to-face meetings. A *qui tam* plaintiff "is not allowed to proceed independently if [it] merely 'adds details' to what is already known in outline." *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) (quotation omitted). The absence of face-to-face meetings is merely one type of failure—"add[ed] details"—when it comes to loss mitigation measures.

ABLE adds that no public disclosures of this type of fraud—lying to a government agency about failing to follow loss mitigation requirements—were ever made. But that doesn't matter. "To qualify as a public disclosure of fraud," we have explained, "the disclosure is not required to use the word 'fraud' or provide a specific allegation of fraud." *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 512 (6th Cir. 2009). "[T]he prior disclosure is sufficient" if it "puts the government on notice of the '*possibility* of fraud' surrounding the . . . transaction." *Gilligan*, 403 F.3d at 390–91 (emphasis added) (quotation omitted). These disclosures did just that. They indicated that U.S. Bank failed to "approve standardized affidavits and declarations" that were in "compliance with applicable laws, rules and court procedures." *In re U.S. Bank*, *supra*, at 7. They also charged U.S. Bank with "engag[ing] in a pattern of misconduct and negligence." R. 25-2 at 36 (quotation omitted). Even though this did not "constitute[] an explicit, formal allegation of either fraud or the essential elements of fraud, it certainly presented enough facts to create an inference of wrongdoing." *U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 332 (6th Cir. 1998). That's all that's required. *See Poteet*, 552 F.3d at 512–13.

All of this shows that the district court correctly dismissed the lawsuit. Whether the court should have dismissed the case under Civil Rule 12(b)(1) for lack of subject matter jurisdiction or Civil Rule 12(b)(6) for failure to state a claim deserves a final word (or two). Before the 2010 amendments, the public disclosure bar stated that "[n]o court shall have jurisdiction over an action . . . based upon . . . public disclosure," 31 U.S.C. § 3730(e)(4)(A) (2006), prompting the Supreme Court to treat the bar as jurisdictional, *see Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 460 (2007). But Congress changed this language in the 2010 amendments. The

provision now says that, if there has been a prior public disclosure, "[t]he court shall dismiss [the] action or claim." 31 U.S.C. § 3730(e)(4)(A). That means the requirement no longer goes to our power—our subject matter jurisdiction—to hear a case. Unless Congress has "clearly state[d]" that a rule is jurisdictional, the Supreme Court has said, "courts should treat the restriction as nonjurisdictional in character." *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (quotations omitted); *see Herr v. U.S. Forest Serv.*, 803 F.3d 809, 813–14 (6th Cir. 2015). In this instance Congress removed the jurisdictional language, and the different language leads to a different meaning. The public disclosure bar is no longer jurisdictional, as every other circuit to address the question has concluded. *See U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299–300 (3d Cir. 2016); *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916–17 (4th Cir. 2013); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 809–11 (11th Cir. 2015); *cf. U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 705–06 (7th Cir. 2014); *U.S. ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014).

For these reasons, we affirm the dismissal of this case, albeit under Civil Rule 12(b)(6), not Civil Rule 12(b)(1).